ESTATE OF LEMKE: STATE, Appellant, vs. LEMKE, Executor, Respondent.

*October 13—November 10, 1931.*

For the appellant there was a brief

For the respondent there was a brief

OWEN, J. Bertha E. Lemke died on March 21, 1927. Among the assets of her estate were 3,667 shares of common stock of the Underwood Veneer Company, a Wisconsin corporation. The par value thereof was $100 per share. The company was a close corporation. Its stock was not listed on the stock exchange and there were practically no sales of its stock within recent years. It had no market value. A determination of the inheritance tax due from the estate required that the actual value of this stock be ascertained. The physical assets of the company consisted, principally, of a sawmill, a veneer plant, a logging railroad, standing timber, and timber lands. Its physical assets were carried upon the books of the company at an amount which gave the stock a value of about $116 per share. The estate claimed that the valuation at which these physical assets were carried upon the books of the company was too high, and much evidence was taken by the county court relative to the actual value of these physical assets. That some of these assets were carried on the books at an excessive value was conceded by all the witnesses who testified. There was a disagreement concerning the amount of the excess, and there was a disagreement concerning the items that were overvalued on the books of the company. However, there was an abundance of evidence which justified the court in finding that the real value of the physical assets of the company gave the capital stock a value of $65 per share. He found its actual value to be $75 per share, which he held included good will. We have thoroughly examined the evidence and reach the conclusion that the valuation placed upon the stock of this company should not be disturbed.

There are presented some assignments of error relating to the admission and exclusion of evidence, which will be considered. Seven pages of the brief are given over to a

discussion of the alleged error of the court in admitting the testimony of one Joseph A. Auchter. Numerous objections were made to the testimony of this witness, but at the close of the trial such objections were withdrawn. The brief in this court was not prepared by the attorney who tried the matter in the county court, and we assume that the attorney who argued the case here overlooked the fact that such objections were withdrawn at the close of the trial. Of course in this state of the record we cannot consider this assignment of error.

Another assignment of error is that the court erred in receiving the testimony of O. J. Swanson, who was assistant general manager of the Underwood Veneer Company. We find nothing in this assignment of error worthy of treatment. Such objections as were made to his testimony were quite perfunctory and unsubstantial.

Still another assignment of error is based upon the refusal of the court to receive in evidence the income tax reports made by the Underwood Veneer Company during the years 1922-1929, inclusive. It was held in *Will of Porter*, 178 Wis. 556, 190 N. W. 473, that the income tax returns made by the corporation were not admissible in evidence to determine the amount of the inheritance tax that should be paid by the estate of a deceased stockholder. The legislature of 1923, following the decision in that case, enacted ch. 73, Laws of 1923, creating sub. (8) of sec. 72.11 of the Statutes, relating to evidence of value of securities, which provides:

"Whenever any decedent shall have left any stocks, bonds or other securities issued by any corporation, joint stock company, partnership, or association, domestic or foreign, owning property or doing business in this state, or any interest therein, or in the assets thereof, all inventories, books, papers and records thereof shall be competent evidence in any court, and shall be accessible to the executor or administrator of the estate of such decedent, the appraisers, public administrator, inheritance tax counsel, or other per-

son designated by the court, for the purpose of ascertaining the true value of such stocks, bonds, securities or other interests, under such conditions and limitations as the court may prescribe; and the court may order the production in court of any such inventories, books, papers and records, and may require the attendance and examination in court of any officer or employee of any such corporation, joint stock company, partnership or association."

It had been previously held by this court in *State ex rel. Pabst Brewing Co. v. Carpenter,* 129 Wis. 180, 108 N. W. 641, that the books of the company were not competent evidence upon the question of the value of the capital stock of the corporation, and in the *Porter Case* it was held that if the books of the corporation were not evidence for that purpose, the income tax reports, which were but a reflection or epitome of what appeared upon the books of the corporation, were not admissible in evidence. The legislative act above quoted specifies that "all inventories, books, papers and records" shall be competent evidence for the purpose of ascertaining the true value of the capital stock of the corporation. It is significant that nothing is said concerning the income tax reports of the corporation. It is contended by the State that, in view of the fact that this legislation promptly followed the decision in the *Porter Case,* the legislature must have acted pursuant to that decision, and that it must have been the legislative intent to renounce the decision in that case holding the income tax returns of the corporation inadmissible in evidence. If such was the ultimate purpose of the legislature, it is not unreasonable to assume that, while they were dealing with special items of evidence, they would have mentioned income tax returns, if it had been the purpose of the legislature to make them admissible in evidence.

It is quite apparent that these income tax returns are not admissible in evidence by reason of this legislative act. However, if this legislative act destroys the premise upon

which the conclusion in the *Porter Case* was based, it is proper for us now to consider whether these returns are admissible in evidence in view of the fact that the books and records of the corporation are now made admissible in evidence by the statute. Of course in the *Porter Case* it was sufficient to say that if the books and records of the corporation themselves were not admissible in evidence, the income tax returns, which merely reflected what appeared upon the books, were not admissible. The question now is whether such income tax returns are admissible in evidence for the purpose of ascertaining the true value of the stock of such corporation, in view of the fact that the books and records themselves are now admissible in evidence.

It is apparent that the books and records of the corporation are made admissible in evidence on the theory that they do afford some evidence of the value of the capital stock of the corporation. They are not conclusive evidence, but, on the theory that they show original investments and what the company originally paid for its assets, they furnish evidence which throws some light upon the value of the stock. Viewed in this light, the books and records of the corporation are primary evidence, and the income tax reports, which are merely tabulations taken from the books of the corporation, must be secondary. We see no reason why the income tax returns should be received in evidence when the books and records themselves are available. Whenever the books and records of the company are available, the income tax returns certainly would be subject to the objection that they are not the best evidence. In this case the books and records of the corporation were before the court, and we fail to appreciate how any prejudicial error resulted to the State by the exclusion of these income tax reports.

We find no error in the case and conclude that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.